## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HAUL HUB, INC.,                                    :
                                                   :
      Plaintiff,                           :
V.                                                 :
                                                   :        **JURY TRIAL DEMANDED**
SEAN DEVINE and TOGGLE                              :
PROFESSIONAL SERVICES, LLC,                         :
                                                   :
      Defendants.                          :        JULY 21, 2016

## COMPLAINT

The Plaintiff, Haul Hub, Inc., hereby files this Complaint against the Defendants, Sean

Devine and Toggle Professional Services, LLC, seeking injunctive and other relief, and in

support hereof avers as follows:

## PARTIES

1.      The Plaintiff, Haul Hub, Inc. ("Haul Hub" and/or "Plaintiff"), is a Delaware corporation

and maintains its principal place of business at 153 Clinton Road, Sterling, Massachusetts.

2.      The Defendant, Sean Devine ("Devine" and/or "Defendant"), is an individual and a

citizen of the State of Connecticut, last known to reside at 16-R Drumlin Road, West Simsbury,

Connecticut.

3.      The Defendant, Toggle Professional Services, LLC ("Toggle" and/or "Defendant"), is a

Connecticut limited liability company and maintains its principal place of business at 16-R

Drumlin Road, West Simsbury, Connecticut.

4.      Upon information and belief, the Defendant Devine and third-party Theresa Devine, also

a resident of West Simsbury, Connecticut, are the sole members of Toggle.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, in that this Complaint includes claims resulting from Defendants' violations of federal statutes, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§1030, *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1831, *et seq.*  This Court has jurisdiction over the remaining claims under 28 U.S.C § 1367(a).

6.     This Court alternatively has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

8.     This is a suit for breach of contract, violation of the CFAA, misappropriation of trade secrets, intentional misrepresentation, fraud, conversion, unjust enrichment, breach of the covenant of good faith and fair dealing, violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq.*, violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110, *et seq.,* and seeks a temporary and permanent injunction, amongst other relief, against Haul Hub's former software developers, Defendants Devine and Toggle, from disclosing or misusing documents, data, confidential information, trade secrets and other valuable information and intellectual property stolen from Haul Hub.

**Haul Hub, Inc.'s Proprietary Application and Platform**

9.      Haul Hub manages dump truck sourcing and operations for construction companies, material suppliers, pavers and other construction related companies.

10.     Joseph Spinelli ("Spinelli") is the sole shareholder and Chief Executive Officer ("CEO") of Haul Hub.

11.     In the summer of 2015, Spinelli decided to build a proprietary three-sided web application and platform ("Haul Hub Application and Platform") to connect independent dump truck drivers with construction companies for the scheduling and performance of services on both public and private construction projects throughout the United States.

12.     On November 20, 2015, Liquid Labs, Inc., d/b/a Gigster ("Gigster") signed a written agreement to provide software project management services for the Haul Hub Application and Platform.

13.     On November 25, 2015, Gigster agreed to a written plan with eight milestones for the Haul Hub Application and Platform.

14.     On December 27, 2015, Gigster completed Milestone 2, which included over 100 mockup screens, logo development and general design work for the Haul Hub Application and Platform.

15.     On January 2, 2016, Gigster started Milestone 3, which entailed work on software code development for the Haul Hub Application and Platform.

**Defendant Devine's Work for Haul Hub Overseeing Gigster**

16.    On January 5, 2016, Spinelli reached out to Devine, his former college classmate, and inquired by text message about getting more information about Devine's company, Toggle. Spinelli explained to Devine that Spinelli was looking for a Chief Technology Officer ("CTO") to supervise the building of Haul Hub's Application and Platform.

17.    Before reaching out to Devine, the design for what the Haul Hub Application and Platform would look like had already been completed.

18.    Devine declined to take a position at Haul Hub.  Instead, Devine agreed that his company, Toggle, would oversee Gigster's work on the Haul Hub Application and Platform on behalf of Haul Hub.

19.    On January 10, 2016, Spinelli introduced Devine to Gigster as the person responsible for overseeing Gigster's work on Haul Hub's Application and Platform.

20.    On January 11, 2016, Devine was given permission for his Haul Hub work to a use a confidential password protected Google Shared Drive, which contained Gigster's work on the Haul Hub Application and Platform, as well as spreadsheets outlining the Haul Hub project schedules and Haul Hub word documents outlining its business plans and strategy.  Devine's permission to access this information was solely for the purpose his work overseeing Gigster's work for Haul Hub.

**Defendant Devine's Representations to Spinelli Concerning Defendant Toggle**

21.     On January 12, 2016, Gigster, Spinelli and Devine participated in a normally scheduled teleconference to review Gigster's progress on its work for Haul Hub towards Milestone 3.

22.     Immediately following the January 12, 2016 conference call with Gigster, Devine called Spinelli and recommended that Haul Hub switch developers from Gigster to Devine's own company, Defendant Toggle.

23.     Devine represented to Spinelli that Toggle would be faster and less expensive at completing Haul Hub's Application and Platform.

24.     Devine represented to Spinelli that Toggle's client list included, among other clients, a large transportation services company.

25.     In January 2016, Spinelli asked Devine whether Devine or Toggle were parties to any non-competition agreements that might prevent either Devine or Toggle from working with Haul Hub.  Devine assured Spinelli, on behalf of himself and Toggle, that he and Toggle were not subject to any such non-competition agreements.

26.     On January 15, 2016, Spinelli and a potential investor met with Devine for further due diligence and again asked Devine whether Devine or Toggle were parties to any non-competition agreements that might prevent either Devine or Toggle from working with Haul Hub.  Devine assured them, on behalf of himself and Toggle, that he and Toggle were not subject to any such non-competition agreements.

27.     Spinelli also asked whether Toggle's developers were working at the time for any other transportation services company.  Devine assured Spinelli and Haul Hub that any of the

developers working on Haul Hub had not and were not involved in Toggle's work for any other transportation services company.  Devine represented that there were no agreements that prevented him or Toggle from working with Haul Hub.

**The Agreement and Payment to Toggle**

28.     On or about January 14, 2016, based upon Devine and Toggle's representations, Haul Hub engaged Toggle through an oral agreement ("Agreement") for Toggle to work on Haul Hub's Application and Platform in exchange for Haul Hub making certain progress payments to Toggle.  As part of the Agreement, Spinelli made it clear that neither Toggle nor Devine should steal Haul Hub's idea for the Haul Hub Application and Platform and that they must keep the work on the Haul Hub Application and Platform strictly confidential.

29.     On or about January 19, 2016, Haul Hub ended its engagement with Gigster and issued payment to Gigster for services provided by Gigster up through that date, totaling approximately $32,000.

30.     Thereafter, Toggle began work for Haul Hub on Haul Hub's Application and Platform.

31.     Haul Hub paid Toggle for its work in three installments, totaling $20,000.

**Haul Hub's Confidential Information and Defendants' Unauthorized Actions**

32.     On or about February 1, 2016, upon the request of Devine, Spinelli provided Devine with the confidential log-in information for Haul Hub's domain *haulhub.com*.  Spinelli provided this information because Devine had represented to Spinelli that Devine needed access to the *haulhub.com* account to get the website up and running.  Upon information and belief, and without permission from Haul Hub, Devine and/or Toggle then moved Haul Hub's domain to a

different registrar and changed Haul Hub's log-in and password credentials.  Devine and Toggle

failed to provide the new log-in and password information to Haul Hub.

**Haul Hub, Inc.'s Corporate Structure**

33.     Spinelli is now, and at all times relevant to this Complaint, has been the sole shareholder

and CEO of Haul Hub.

34.     On January 15, 2016, a potential investor in Haul Hub asked Devine what type of

compensation Devine would be looking for if Devine were to join Haul Hub as Haul Hub's full

time CTO.  Devine replied that he could not commit to a full time position because of his other

commitments, but that he would request an agreed-upon mix of salary and stock options when

his other commitments were completed.

35.     On or about June 3, 2016, Spinelli informed Devine that Spinelli was planning to issue

founders shares in Haul Hub to a potential investor, who has been an advisor to Haul Hub since

the Summer of 2015.  To date, Haul Hub has not issued shares to any person or entity other than

Spinelli.

36.     In the same conversation, Spinelli informed Devine that another classmate of theirs who

has significant experience in technology startups was available and looking for his next project.

Spinelli told Devine that he was considering making the classmate the Chief Financial Officer

("CFO") of Haul Hub once the application and platform were completed.

37.     Following this conversation between Spinelli and Devine, Devine stated that he would

not accept the offer to be the CTO of Haul Hub once the Haul Hub Application and Platform

were completed and instead requested that he be made the CEO of Haul Hub, the role Spinelli

was currently occupying.

38.     Haul Hub declined Devine's request that Haul Hub name Devine CEO.

**Toggle's Undisclosed Non-Competition Agreement**

39.     On or about June 16, 2016, Spinelli received an e-mail from a potential investor advising Spinelli that Devine had executed a non-competition agreement on behalf of Toggle with a large transportation company.  The potential investor asked Spinelli if he was aware of the existence of this non-competition agreement.  Prior to the disclosure of the existence of this non-competition agreement, Spinelli had not been aware of its existence despite his requests to Devine and Toggle for the disclosure of any such agreements.

40.     On June 16, 2016, Spinelli sent a written request by text message to Devine for a copy of the non-competition agreement with the large transportation company.

41.     Spinelli asked Devine if any Toggle developers had worked on both the Haul Hub project and any projects for the large transportation company with whom Toggle had the non-competition agreement.  Devine responded that no Toggle developers had worked on projects for both Haul Hub and the large transportation company.

**Spinelli's Rejected Demands**

42.     Following the June 16, 2016 text conversation between Spinelli and Devine, Devine became defensive and Devine indicated that if they did not work out a structure where Spinelli and Devine would have equal ownership and power in Haul Hub, Devine and Toggle would no longer want to be work with Haul Hub and that Devine would be "all done."

43.     On June 16, 2016, Spinelli informed Devine by text message that Haul Hub had rejected Devine's demand for equal ownership and power in Haul Hub.  Spinelli stated that he was potentially willing to negotiate a stock ownership position for Devine in Haul Hub if Devine

became Haul Hub's Chief Technology Officer upon completion of the Haul Hub Application and

Platform, but Spinelli made clear that he was not offering Devine an equal share agreement in

Haul Hub due to, among other things, the large cash investment Spinelli had already made into

Haul Hub.

44.      Devine informed Spinelli that he would never work for Spinelli at Haul Hub.

**Previously Undisclosed Non-Competition Agreement**

45.      On or about June 22, 2016, at the request of Haul Hub, Devine and Toggle, through

counsel, finally produced a consulting agreement with a large transportation services company

containing a non-competition provision providing, in relevant part:

> During the term of this Agreement, and any extensions hereto, and
> during the period set forth in Section 8 below, Consultant, Sean
> Devine and any other principal of Consultant, will not directly or
> indirectly, engage or participate or have any ownership or other
> financial interest in, or any way assist, or provide services to any
> individual or entity in any business or enterprise that competes
> with Client.   This provision shall not apply to Sean Devine's
> position and/or ownership interest in Partage, LLC.

**Toggle Reveals Haul Hub Confidential Information**

46.      On June 23, 2016, Spinelli listened to a podcast entitled "The Remote Residency" in its

entirety.

47.      In this podcast, Toggle developers admitted to working on a project for the same large

transportation services company with which Toggle had the previously undisclosed non-

competition agreement.  The Toggle developers also admitted to working on the Haul Hub

Application and Platform.  In addition, the developers revealed Haul Hub's proprietary and

highly confidential information on the podcast.

**Haul Hub's Termination of the Agreement**

48.     On June 30, 2016, Haul Hub sent a letter to counsel for Devine and Toggle terminating the Agreement.

49.     In addition, the June 30, 2016 termination letter demanded that Devine and Toggle, *inter alia*, immediately do the following:

> A.     Turn over all log-in and password information for the domain name *haulhub.com*, which is owned by Haul Hub;

> B.     Immediately cease and desist all work on *haulhub.com* and the Haul Hub Application and Platform and destroy any work done to date after providing one copy to Defendants' counsel and one copy to Haul Hub's counsel;

> C.     Return to Haul Hub all payments received from Spinelli and Haul Hub to date;

> D.     Remove all videos discussing Haul Hub's proprietary information or using Haul Hub in discussions or representing Haul Hub to be a client of Toggle; and

> E.     Arrange for the immediate execution by Devine and all employees or independent contractors of Toggle a confidentiality agreement covering all facets of the development and other work performed by such persons for Haul Hub.

50.     Following the termination of the Agreement with Toggle, Haul Hub reengaged the services of Gigster to complete work on Haul Hub's Application and Platform.  The Defendants' wrongful actions have delayed the release of the Haul Hub Application and Platform.  Due to the misrepresentations made by Devine and Toggle stated herein, Haul Hub was not able to use the work performed by Toggle.

51.     Haul Hub has demanded that Devine and Toggle return all of Haul Hub's proprietary and confidential information and all of the work product that Toggle did for Haul Hub.  Defendants have refused to do so, in violation of the Agreement and applicable law.

52.     Devine and Toggle have admitted that Toggle and Devine continue to work for the large transportation company and there is a significant continuing threat that Toggle and/or Devine are using the work that Haul Hub paid Toggle for on Toggle's project for that large transportation company in violation of the Agreement and applicable law.

### COUNT I – BREACH OF CONTRACT
#### (as to Devine and Toggle)

53.     Paragraphs 1 through 52 of the Complaint are incorporated here by reference.

54.     Devine and Toggle have breached the Agreement by, *inter alia*, divulging confidential and proprietary information as stated herein as well as by failing to deliver a usable application and platform to Haul Hub.

55.     There has been no prior breach by Haul Hub.  To the contrary, Haul Hub has fully honored and performed its obligations under the Agreement, and has satisfied all conditions precedent to its enforcement.

56.     As a direct result of Devine and Toggle's breach and/or likely breaches of the Agreement, Devine and Toggle have caused and/or will inevitably cause Haul Hub harm consisting of the loss of business, potential business, client and contractor goodwill, the compromise of Haul Hub's trade secrets and/or confidential and proprietary information, and compromise Haul Hub's competitive advantages to connect independent dump truck drivers with construction companies for the scheduling and performance of services on both public and private construction projects.

57.     As a direct result of Devine and Toggle's breaches, the release of the Haul Hub Application and Platform has been delayed.

58.     As a direct result of Devine and Toggle's breaches, Haul Hub was forced to re-engage Gigster to work on the Haul Hub Application and Platform, for which Haul Hub has had to pay Gigster.

59.     Devine and Toggle continue and/or threaten to continue the breaches of their legal and contractual obligations owed to Haul Hub and inflict and/or threaten to inflict upon Haul Hub the irreparable harm, injury, and damage described herein.

## COUNT II – VIOLATION OF COMPUTER FRAUD & ABUSE ACT, 18 U.S.C. § 1030, *et seq.* (as to Devine and Toggle)

60.     Paragraphs 1 through 59 of the Complaint are incorporated here by reference.

61.     In violation of 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4), which are actionable civilly pursuant to 18 U.S.C. §1030(g), Devine and Toggle intentionally and deceptively accessed Haul Hub's confidential, proprietary, and trade secret information on computer systems belonging to Haul Hub for the express and unauthorized purpose of accessing, obtaining, downloading, and/or retaining such information.

62.     Devine and Toggle's accessing of Haul Hub's information for the purpose of accessing, securing, and transmitting Haul Hub's confidential, proprietary, and trade secret information was unauthorized by Haul Hub and/or exceeded the scope of Devine and Toggle's authorization; was contrary to the Agreement; and was done for the benefit of Devine and Toggle.  Devine and Toggle acted with no business purpose that could possibly benefit Haul Hub.

63.     Devine and Toggle's access, use, and/or transmission of much of this information was entirely unauthorized and/or exceeded the scope of his authorization, and was detrimental and contrary to any legitimate business purpose of Haul Hub.

64.     The computer and/or computer systems intentionally accessed and used by Devine and Toggle were "protected computers" within the meaning of 10 U.S.C. § 1030, *et seq.*, because they were used in interstate commerce and communication, including, but not limited to, for communicating and maintaining information regarding numerous customers and/or customer locations with which Haul Hub was engaged in interstate commerce.  Devine and Toggle downloaded, retained, and/or transmitted the information without authorization, and that information was transmitted from and through an email and/or computer system that caused the interstate transmission and communication of said information.

65.     Devine and Toggle's actions were intentional and were taken deliberately, maliciously, wantonly, fraudulently, deceptively, and/or with reckless and deliberate disregard for Haul Hub's lawful rights, and without privilege or justification.

66.     Devine and Toggle's unauthorized access of Haul Hub's computer and computer systems for the purposes of taking and transmitting Haul Hub's trade secrets and/or confidential and proprietary information has caused and/or will cause Haul Hub significant losses, far in excess of the jurisdictional minimum established by the CFAA.

67.     As a result of Devine and Toggle's unauthorized access of Haul Hub's computer and computer systems, Haul Hub has had to expend costs far exceeding $5,000 by reengaging Gigster to complete the work that Toggle said it had completed for the Haul Hub Application and Platform.

## COUNT III - COMPUTER CRIMES IN VIOLATION
## OF CONN. GEN. STAT. §§ 53a-251(e) and 52-570b
**(as to Devine and Toggle)**

68.     Paragraphs 1 through 67 of the Complaint are incorporated here by reference.

69.     Upon information and belief, Devine and Toggle knowingly and intentionally accessed,

caused to be accessed, retained, and/or used Haul Hub's information.

70.     Accordingly, Devine and Toggle are guilty of computer crimes for misuse of computer

system information, in violation of Conn. Gen. Stat. § 53a-251(e), which is civilly actionable

pursuant to Conn. Gen. Stat. § 52-570b.

71.     As a result of Devine and Toggle's conduct, Haul Hub has been harmed and is entitled to

the recovery of damages in accordance with Connecticut General Statutes Section 52-570b(c).

72.     Haul Hub also seeks an order enjoining Devine and Toggle's illegal conduct pursuant to

Conn. Gen. Stat. § 52-570b(a)(l).

## COUNT IV – VIOLATION OF
## DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831, *et seq.*
**(as to Devine and Toggle)**

73.     Paragraphs 1 through 72 of the Complaint are incorporated here by reference.

74.     Haul Hub protects the Haul Hub Application and Platform, and the data and documents

related thereto, as trade secrets, as defined by 18 U.S.C. §1839(3).

75.     Haul Hub has invested significant time, effort, resources, and money in developing this

information, which provides Haul Hub with significant and valuable business advantages.

76.     Such trade secrets and confidential information constitute valuable information not

available to others through publicly available sources, and are important to Haul Hub in the

conduct of its business thereby entitling Haul Hub to the use and enjoyment of such trade secrets.

77.     Such trade secrets and confidential information are utilized by Haul Hub for use in interstate commerce.

78.     Haul Hub has taken reasonable measures to protect its confidential and trade secret information, including, but not limited to, its utilization of procedures to restrict access to this information.

79.     Defendants Devine and Toggle, as contracted developers for Haul Hub, occupied a position of fiduciary trust and confidence, and such trade secrets were communicated to and otherwise accessible to Devine and Toggle during their work on the Haul Hub Application and Platform thereby making it unjust to permit Devine and Toggle to use or disclose of such trade secrets.

80.     Notwithstanding his contractual, fiduciary, and common law obligations, Devine and Toggle will actually and/or inevitably misappropriate, use, and/or disclose such information in a manner that will cause harm to Haul Hub.

81.     As a direct result of Devine and Toggle's actual and/or inevitable misappropriation of such information, Haul Hub will suffer irreparable harm.

**COUNT V – VIOLATION OF THE CONNECTICUT
UNIFORM TRADE SECRETS ACT, CONN. GEN. STAT. § 35-50 *et seq.*
(as to Devine and Toggle)**

82.     Paragraphs 1 through 81 of the Complaint are incorporated here by reference.

83.     Haul Hub protects its application and platform as trade secrets, as defined by Conn. Gen. Stat. § 35-51(d).

84.     Haul Hub has invested significant time, effort, resources, and money in developing this information, which provides Haul Hub with significant and valuable business advantages.

85.     Such trade secrets and confidential information constitute valuable information not available to others through publicly available sources, and are important to Haul Hub in the conduct of its business thereby entitling Haul Hub to the use and enjoyment of such trade secrets.

86.     Haul Hub has taken reasonable measures to protect its confidential and trade secret information, including, but not limited to, its utilization of procedures to restrict access to this information.

87.     Defendants Devine and Toggle, as contracted developers for Haul Hub, occupied a position of fiduciary trust and confidence, and such trade secrets were communicated to and otherwise accessible to Devine and Toggle during their work on the Haul Hub Application and Platform thereby making it unjust to permit Devine and Toggle to use or disclose such trade secrets.

88.     Notwithstanding their contractual, fiduciary, and common law obligations, Devine and Toggle will actually and/or inevitably misappropriate, use, and/or disclose such information in a manner that will cause harm to Haul Hub.

89.     As a direct result of Devine and Toggle's actual and/or inevitable misappropriation of such information, Haul Hub will suffer irreparable harm.

### COUNT VI – CONVERSION
**(as to Devine and Toggle)**

90.     Paragraphs 1 through 89 of the Complaint are incorporated here by reference.

91.     The confidential, proprietary and trade secret information, including but not limited to the aforementioned Haul Hub domain and Haul Hub's development data related to the Haul Hub Application and Platform taken by Devine and Toggle, were and are the rightful property of Haul

Hub, which held valid and exclusive title to all such property, and is exclusively entitled to possession of such property.

92.     By wrongfully misappropriating Haul Hub's confidential, proprietary and trade secret information, Devine and Toggle have intentionally interfered with Haul Hub's property rights by wrongfully exercising dominion and control over the information, and have deprived Haul Hub of the exclusive possession or use of such information.

93.     Devine and Toggle's wrongful misappropriation constitutes the tort of conversion, which has proximately caused damages to Haul Hub.

**COUNT VII - UNJUST ENRICHMENT**
**(as to Devine and Toggle)**

94.     Paragraphs 1 through 93 of the Complaint are incorporated here by reference.

95.     Payment by Haul Hub of $20,000 to Devine and Toggle constitutes a benefit to Devine and Toggle.

96.     Haul Hub did not receive the full value of the agreed upon services, because due to the misrepresentations made by Devine and Toggle stated herein, Haul Hub was not able to use the work performed by Toggle.

97.     Payments paid to Toggle constitute a detriment to Haul Hub, which was forced to reengage the services of Gigster to complete the Haul Hub Application and Platform.

**COUNT VIII - BREACH OF COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(as to Devine and Toggle)**

98.     Paragraphs 1 through 97 of the Complaint are incorporated here by reference.

99.     The Agreement contained an implied covenant of good faith and fair dealing.

100.     The foregoing actions of Devine and Toggle have been in furtherance of an improper

motive and dishonest purpose, constitute bad faith, were unreasonable, outrageous and malicious

and violate the covenant of good faith and fair dealing implied in the Agreement.

101.     As a result of Devine and Toggle's conduct, Haul Hub has incurred and will continue to

incur, substantial harm and damages.

**COUNT IX - INTENTIONAL MISREPRESENTATION**
**(as to Devine and Toggle)**

102.     Paragraphs 1 through 101 of the Complaint are incorporated here by reference.

103.     Devine and Toggle misrepresented, among other things, that it could perform work on the

Haul Hub Application and Platform free from any covenants not to compete with third parties.

104.     Upon information and belief, at the time Defendants made these representations, Devine

and Toggle knew them to be untrue.

105.     Haul Hub justifiably relied on Devine and Toggle's representations in ending its

relationship with Gigster and entering into the Agreement with Devine and Toggle.

106.     As a result of Devine and Toggle's false and fraudulent statements, Haul Hub has

sustained monetary harm.

**COUNT X – FRAUD**
**(as to Devine and Toggle)**

107.     Paragraphs 1 through 106 of the Complaint are incorporated here by reference.

108.     Devine and Toggle represented to Haul Hub that neither party had executed covenants

not to compete with any third parties that would impede their ability to perform work for Haul

Hub.

109.    Upon information and belief, at the time that Devine and Toggle made such representation, they were aware of Devine and Toggle's consulting agreement with a large trucking company, which contained such a covenant not to compete.

110.    Upon information and belief, Devine and Toggle made these false and fraudulent representation in an effort to induce Haul Hub to engage Toggle and/or to continue with the engagement of Toggle to work on the Haul Hub Application and Platform for their own monetary gain.

111.    As a result of Devine and Toggle's misrepresentations, Haul Hub has incurred financial harm and detriment.

### COUNT XI -VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 42-110, *et seq.* (as to Devine and Toggle)

112.    Paragraphs 1 through 111 of the Complaint are incorporated here by reference.

113.    The foregoing conduct constitutes a course of deceptive and misleading acts and unfair trade practices, performed by Devine and Toggle in their conduct of trade or commerce within this State, within the meaning of Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), *et seq*.

114.    The foregoing deceptive acts and unfair trade practices of Devine and Toggle have caused Haul Hub to suffer an ascertainable loss of money and financial harm and detriment.

115.    By virtue of Conn. Gen. Stat. § 42-110g, Haul Hub is entitled to such actual damages and also may, and should, be awarded punitive damages, costs, and reasonable attorney's fees.

116.    In accordance with of Conn. Gen. Stat. § 42-110g (c) a copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection.

### COUNT XII – TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
### (as to Devine and Toggle)

117.    Paragraphs 1 through 116 of the Complaint are incorporated here by reference.

118.    Devine and Toggle's violations of law as set forth above, misrepresentations and violation of the Agreement has caused, and will continue to cause, irreparable and immediate injury, loss and damage to Haul Hub, for which it has no adequate remedy at law.

119.    Haul Hub thus specifically prays that it receive injunctive relief, both in the form of a temporary restraining order, and a temporary and permanent injunction:

        A.    Enjoining Devine and Toggle from removing, using or destroying any information obtained by Devine and Toggle from Haul Hub or work done by Haul Hub;

        B.    Ordering Devine and Toggle to turn over to Haul Hub any and all devices to which they copied Haul Hub confidential, trade secret and/or proprietary information or other Haul Hub data and to turn over any and all copies of all such information or other data that Devine and/or Toggle removed from Haul Hub;

        C.    Ordering Devine and Toggle from further utilizing, disclosing or revealing any of Haul Hub's information, confidential documents or data.

        D.    Ordering that thehaulhub.com domain be returned to Haul Hub along with all passwords associated therewith;

        E.    Ordering that the Haul Hub platform, including the truck broker application and the trucking company application, be removed from web;

F.      Enjoining Devine and Toggle from using or disclosing Haul Hub's trade secrets

        or proprietary and confidential information to the benefit of anyone other than

        Haul Hub and ordering Devine and Toggle to return all work product done on the

        Haul Hub Application and Platform; and

G.      Ordering the creation of a constructive trust on all of Devine and Toggle's

        improper earnings, and unjust enrichment and reasonable royalty damages

        resulting from Devine and Toggle's wrongful use and/or disclosure of Haul Hub's

        confidential and trade secret information.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Haul Hub, Inc., demands judgment in its favor and against the Defendant Sean Devine and the Defendant Toggle Professional Services, Inc., and respectfully requests the following relief:

A.   Temporary, preliminary, and permanent injunctive relief, as set forth more specifically above in Paragraph 119 (A)-(G), prohibiting Devine and Toggle from using or disclosing Haul Hub's trade secrets or proprietary and confidential information to the benefit of anyone other than Haul Hub and ordering Devine and Toggle to return all work product done on the Haul Hub Application and Platform;

B.   Other equitable relief, including without limitation a constructive trust on all of Devine and Toggle's improper earnings, and unjust enrichment and reasonable royalty damages resulting from Devine and Toggle's wrongful use and/or disclosure of Haul Hub's confidential and trade secret information;

C.   Any actual damages, to the extent such damages are capable of being calculated, that Haul Hub is entitled to recover as a result of Devine and Toggle's actions as set forth above;

D.   Exemplary damages as permitted by law;

E.   Attorneys' fees pursuant to, *inter alia*, Conn. Gen. Stat. §§ 35-54 and 42-110g(d);

F.   Common law interest;

G.   Statutory interest pursuant to, *inter alia*, Conn. Gen. Stat. §37-3a;

H.   Treble Damages pursuant to, *inter alia*, Conn. Gen. Stat. §42-110g;

- 22 -

I.      Punitive Damages pursuant to, *inter alia*, Conn. Gen. Stat. §42-110g(a);

J.      The costs and fees of these proceedings; and

K.      All such other relief as this Court deems appropriate, including, without

limitation, attorneys' fees.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

By: */s/ Nuala E. Droney*_____
Nuala E. Droney (ct27192)
Peter E. Strniste, Jr. (ct20830)
Kristopher I. Moore (ct29143)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: *ndroney@rc.com*;
*pstrniste@rc.com*; *kmoore@rc.com*

Counsel for the Plaintiff, Haul Hub, Inc.